UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| RHONDA FELICIA JACKSON, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | No.: 3:12-CV-608-TAV-HBG |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) | |

# **MEMORANDUM AND ORDER**

This matter is before the Court on plaintiff's Motion for Summary Judgment [Doc. 9] and defendant's Motion for Summary Judgment [Doc. 12]. Plaintiff Rhonda Jackson seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

The Court has carefully reviewed the medical evidence in the record, the testimony at the hearing before the ALJ, and all of the other evidence in the record. Notably, plaintiff's medical history and the content of the ALJ's decision are not in dispute and therefore need not be repeated here. The parties have filed memoranda in support of their positions [Docs. 11, 13], and plaintiff requested oral argument. The Court, however, finds that oral argument is not necessary in this case.

## I. ALJ's Findings

The ALJ made the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 30, 2009.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of February 2, 2005 through her date last insured of December 30, 2009 (20 CFR 404.1571 *et seq.*).
>
> 3. Through the date last insured, the claimant had the following severe impairments: post-traumatic stress disorder, depression, bipolar disorder, and history of polysubstance abuse (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to one and two-step instructions; no more than occasional interaction with the public; and no more than occasional changes in job settings or routines.
>
> 6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).
>
> 7. The claimant was born on November 25, 1961 and was 48 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).
>
> 8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a

2

framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from February 2, 2005, the alleged onset date, through December 30, 2009, the date last insured (20 CFR 404.1520(g)).

[Tr. 14–21].

## II. Disability Eligibility

To qualify for SSI benefits, an individual must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. *See* 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of

3

substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at the fifth step. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

### III. Standard of Review

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); *See also Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison v. NLRB*, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case

5

de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Walters*, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." *Wilson*, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. *See id.* at 547.

On review, plaintiff bears the burden of proving his entitlement to benefits. *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citing *Halsey v. Richardson*, 441 F.2d 1230 (6th Cir. 1971)).

## IV. Positions of the Parties

Plaintiff worked as a registered nurse from 1990 until 2005, and though she maintains her license as a registered nurse, this license is now in inactive status, and she

6

has not worked since 2005 [Tr. 33, 140]. Plaintiff alleges that she has been disabled since February 2005 due to chronic depression, lack of sleep, panic attacks, anxiety, and hand problems [Tr. 139]. She adds that she has trouble being around people and even leaving her house, noting that she is depressed as a result of various events that have occurred in her life [*Id.*]. Plaintiff testified that her inability to focus, forgetfulness, and pain are the worst of the medical maladies that have prevented her from returning to work [Tr. 41].

When Hurricane Katrina made landfall, plaintiff was living and working on the gulf coast, near New Orleans [Tr. 43]. She testified that her home was engulfed by the storm and that her family needed three days to cut its way out of the home with axes [*Id.*]. The hospital where plaintiff had worked was "completely submerged and destroyed," and thus plaintiff lost her job [*Id.*]. Subsequently, plaintiff's father passed away, she had a hysterectomy, she became unable to sleep, her father-in-law died, her best friend died of breast cancer, and she suffered from major depressive disorder [Tr. 43–44, 444].[1]

Dr. Randall May ("Dr. May"), plaintiff's treating psychiatrist, diagnosed her with post-traumatic stress disorder ("PTSD") and bipolar disorder [Tr. 403–09]. Dr. Berta Bergia ("Dr. Bergia"), plaintiff's treating neurologist, diagnosed her with "widespread pain" aggravated by severe insomnia, as well as "very significant cognitive dysfunction and poor overall functioning" [Tr. 414]. Dr. Bergia also noted pain, numbness, tingling, and weakness in plaintiff's legs, arms, and torso [Tr. 361].

---

[1] Medical records of Dr. Berta Bergia also note plaintiff's history of childhood abuse [Tr. 353].

7

Plaintiff contends that the ALJ committed error by violating the "treating source" rule. 20 C.F.R. § 404.1527(c)(2). More specifically, plaintiff asserts that Dr. May completed a "Medical Assessment of Ability To Do Work-Related Activities (Mental)" dated January 29, 2010, and plaintiff submits that the ALJ did not properly evaluate Dr. May's opinions [Tr. 403–06]. In his assessment, Dr. May stated that plaintiff suffers from bipolar disorder and PTSD [Tr. 403]. Moreover, Dr. May described all of plaintiff's "social interaction" abilities, and almost all of plaintiff's "understanding and memory" and "concentration and persistence" abilities, as falling within the "poor/none" category [Tr. 404–05]. Dr. May further noted that plaintiff's ability to understand and carry out short and simple instructions was "fair" [Tr. 404]. Yet, the ALJ accorded "little weight" to these opinions regarding mental limitations based on the fact that plaintiff had applied for a job in the healthcare field and Dr. Bergia's April 2010 note indicating that her mental status had improved [Tr. 19].

Dr. Bergia completed a "Medical Assessment Of Ability To Do Work-Related Activities (Physical)" on February 1, 2010 [Tr. 411–14]. In this assessment, Dr. Bergia opined that: (1) plaintiff requires more rest than "the one 30-minute break and two 15-minute breaks normally allowed"; (2) plaintiff's subjective complaints were reasonable in view of his observations and diagnoses; (3) plaintiff could not reasonably be expected to reliably attend an eight-hour work day and forty-hour work week in light of her pain, fatigue, or other limitations; (4) plaintiff's medication causes fatigue or lapses in concentration or memory on a regular basis; (5) such lapses would occur every day and

8

for several hours a day; and (6) plaintiff would have a reasonable medical need to be absent from a full-time work schedule on a chronic basis [Tr. 413–14]. Dr. Bergia therefore concluded that plaintiff suffered from "significant cognitive dysfunction" and "<u>severe</u> . . . insomnia" causing severe mental lapses and widespread pain [Tr. 414 (emphasis in original)].

Yet, the ALJ also gave "little weight" to Dr. Bergia's opinions, apparently for the same reasons he gave little weight to the opinions of Dr. May [Tr. 19]. Notably, there was no independent or state agency examination of plaintiff. The ALJ acknowledged that two state agency medical consultants reviewed plaintiff's records in September and December of 2009, but the ALJ gave "little weight" to their opinions, as well [*Id.*].

The Commissioner does not contest the fact that Dr. May and Dr. Bergia are treating physicians. Instead, the Commissioner argues that the ALJ may "properly discount" a treating source opinion that conflicts with other evidence in the record [Doc. 13 pp. 4–6]. To this end, the Commissioner states that the ALJ discounted the opinions of Dr. May and Dr. Bergia because notes in plaintiff's medical record were inconsistent with their opinions concerning plaintiff's limitations.

**V.     Analysis**

For the reasons that follow, the Court finds that a remand is appropriate and necessary in this case because the ALJ failed to apply the correct legal standards and render his decision in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. On remand, the ALJ must sufficiently (1)

9

address the opinions of Dr. May and Dr. Bergia, in light of the factors set forth for consideration by applicable case law, (2) assign the weight to be given to these opinions, and (3) explain the weight given, if any. In his previous opinion, the ALJ's assignment of "little weight" to the opinions of Dr. May and Dr. Bergia is not supported by the kind of analysis required of the ALJ, thereby depriving plaintiff of a substantial right in the form of an important and guaranteed benefit or safeguard [Tr. 19].

Under the treating source rule, "the Commissioner has mandated that the ALJ 'will' give a treating source's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'" *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (quoting 20 C.F.R. § 404.1527(d)(2)). If, however, an ALJ decides not to give the opinion of a treating physician controlling weight, he or she must then apply the following factors in determining the weight to give the opinion: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, [the] supportability of the opinion, [the] consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).

The ALJ has a clear duty to "always give good reasons in [the] notice of determination or decision for the weight [he or she] give[s] [a] treating source's opinion." 20 C.F.R. § 404.1527[d][2]. Such good reasons must always be supported by evidence of

10

record and must be "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Cole*, 661 F.3d at 937 (quoting SSR 96-2p, 1996 WL 374188 (July 2, 1996)). This good reasons requirement is designed "to safeguard the claimant's procedural rights" and "is intended 'to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that [s]he is not.'" *Cole*, 661 F.3d at 937–38 (quoting *Wilson*, 378 F.3d at 544).

Importantly, "[a] finding that a treating source medical opinion . . . is not entitled to controlling weight [does] not [mean] that the opinion should be rejected." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009). "In addition to balancing the factors to determine what weight to give a treating source opinion denied controlling weight, the agency specifically requires the ALJ to give good reasons for the weight actually assigned." *Cole*, 661 F.3d at 938. "On the other hand, opinions from nontreating and nonexamining sources are never assessed for 'controlling weight.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). Such opinions are instead weighed "based on the examining relationship [or lack thereof], specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling." *Id.* (citing 20 C.F.R. § 404.1527(c)).

11

Here, Dr. May and Dr. Bergia, both specialists, provided opinions indicating that plaintiff was suffering from medical conditions and related limitations which, if accepted, support a finding of disability. Indeed, this was the testimony of the vocational expert at the hearing [Tr. 55–57]. The Court finds that the ALJ erred by failing to adequately address, evaluate, and assign weight to these treating source opinions, and thus his opinion was not reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner.

Importantly, as mentioned, even finding that a treating source opinion is not entitled to controlling weight does not automatically mean that it should be entitled to no weight, *Blakley*, 581 F.3d at 408, and not assigning a specific weight to a treating source opinion "alone constitutes error." *Cole*, 661 F.3d at 938 (citing *Blakley*, 581 F.3d at 408). Therefore, in light of the foregoing, the Court finds that the ALJ did not properly apply the treating source rule to the present matter, thereby depriving plaintiff of a substantial right and important benefit or safeguard.

Moreover, though the ALJ gave "little weight" to the opinions of every medical expert in the case and questioned plaintiff's credibility, there was little in the record upon which the ALJ could conclude that plaintiff had the residual functional capacity to "perform a full range of work at all exertional levels" with limitations only as to simple instructions, occasional interaction with the public, and occasional changes in job settings or routines [Tr. 16].

12

Accordingly, the Court finds that the ALJ failed to appropriately and fully apply the proper legal and procedural framework to plaintiff's case in rendering his opinion, and the Court must therefore decide whether this error requires that the case be remanded. The Sixth Circuit "has made clear that '[it] do[es] not hesitate to remand when the Commissioner has not provided good reasons for the weight given to a treating physician's opinion and [it] will continue remanding when [it] encounter[s] opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.'" *Cole*, 661 F.3d at 939 (quoting *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009) (citation and internal quotation marks omitted)).

Yet, the Court will not remand the case if the violation is harmless error. A violation of the good reasons rule can be deemed harmless error if:

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) . . . even though she has not complied with the terms of the regulation.

*Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (citation and internal quotation marks omitted).

The Court finds that none of these exceptions apply here. Upon review of the record, the opinions of Dr. May and Dr. Bergia are not patently deficient. Moreover, the ALJ neither adopted their opinions nor made findings sufficiently consistent with their opinions, and thus the second exception does not apply. Lastly, the ALJ's opinion does

13

not sufficiently explain to plaintiff the weight he gave to the opinions of Dr. May and Dr. Bergia or his reasons for doing so. Therefore, concerning the third exception, "the Commissioner cannot show that, despite his failure to comply with the terms of 20 C.F.R. § 1527(c)(2), he has otherwise met the regulation's goal." *Gayheart*, 710 F.3d at 380.

The Court consequently concludes that this matter must be remanded. Importantly, it is not certain that the record establishes disability. Recent case law makes clear that an ALJ who assigns weight to the opinions of a treating physician and explains that weight may meet the requirements of the treating source rule. *Brasseur v. Comm'r of Soc. Sec.*, 525 F. App'x 349, 350 (6th Cir. 2013) (noting that an ALJ who set forth sufficient reasoning for his decision to reject the opinions of the plaintiff's two treating physicians met the standard articulated by the Sixth Circuit in *Gayheart*).

Finally, plaintiff argues that the ALJ did not give proper weight to the opinions of Wendy Pitts Reeves ("Reeves"), a licensed clinical social worker, or properly explain the weight given. Reeves opined in 2010 that plaintiff was severely impaired in her ability to "think, focus, and follow through" due to "frequent confusion, disorientation[,] and anxiety" [Tr. 689, 691]. As a result, Reeves states that plaintiff cannot read, drive a car, or engage in full-time work [Tr. 689, 691]. The ALJ assigned "little weight" to the mental limitation opinions of Reeves, apparently for the same reasons he rejected the opinions of Dr. May and Dr. Bergia [Tr. 19].

The parties acknowledge that Reeves, as a licensed clinical social worker, is not an "acceptable medical source" who can provide evidence to establish the existence of a

14

medically determinable impairment or an opinion entitled to controlling weight. 20 C.F.R. § 404.1513(a), (c), (d); SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). Still, Reeves's findings can be used "to show the severity of the . . . impairment(s) and how it affects [plaintiff's] ability to function." SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). Yet, the ALJ seemingly merged the analysis of, and assignment of weight to, the opinions of Dr. May, Dr. Bergia, and Reeves. On remand, the ALJ should separate these analyses and state how much weight, if any, is accorded to each individual's opinions.

**VI. Conclusion**

For the reasons stated herein, plaintiff's Motion for Summary Judgment [Doc. 9] is hereby **GRANTED in part** and **DENIED in part**, and the Commissioner's Motion for Summary Judgment [Doc. 12] is **DENIED**. It is **ORDERED** that this case be **REMANDED** to the ALJ for further proceedings consistent with this opinion.

IT IS SO ORDERED.

s/ Thomas A. Varlan<br>
CHIEF UNITED STATES DISTRICT JUDGE